J-E02008-16

2016 PA Super 248

| | |
|---|---|
| MICHELE VALENTINO, AS ADMINISTRATRIX OF THE ESTATE OF DEREK VALENTINO, DECEASED, AND MICHELE VALENTINO, IN HER OWN RIGHT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PHILADELPHIA TRIATHLON, LLC, | |
| Appellee | No. 3049 EDA 2013 |

Appeal from the Order Entered September 30, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): April Term, 2012 No. 1417

BEFORE: GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, PANELLA, SHOGAN, LAZARUS, OLSON and OTT, JJ.

OPINION BY OLSON, J.:                                **FILED NOVEMBER 15, 2016**

Appellant, Michele Valentino (in her own right and as administratrix of the estate of Derek Valentino), appeals from an order entered on September 30, 2013 in the Civil Division of the Court of Common Pleas of Philadelphia County granting summary judgment on behalf of Philadelphia Triathlon, LLC (Appellee). After careful consideration, we affirm.

In 2010, Appellee organized an event known as the Philadelphia Insurance Triathlon Sprint (the Triathlon). Three events comprised the Triathlon: a one-half mile swim, a 15.7 mile bicycle race, and a three and one-tenth mile run. Trial Court Opinion, 8/14/14, at 2. The swimming

portion of the competition occurred in the Schuylkill River in Philadelphia, Pennsylvania.

To compete in the Triathlon, each participant was required to register for the event. As part of the registration process, participants paid a fee and electronically executed a liability waiver form.[1] Each participant also

_____

[1] Among other things, the lengthy form stated that Mr. Valentino "underst[ood] and acknowledge[d] the physical and mental rigors associated with triathlon," "realize[d] that running, bicycling, swimming and other portions of such [e]vents are inherently dangerous and represent[ed] an extreme test of a person's physical and mental limits," and, "underst[ood] that participation involves risks and dangers which include, without limitation, the potential for serious bodily injury, permanent disability, paralysis and death [as well as] dangers arising from adverse weather conditions, imperfect course conditions, water, road and surface hazards, equipment failure, inadequate safety measures, participants of varying skill levels, situations beyond the immediate control of [Appellee], and other presently unknown risks and dangers[.]" Appellee's Motion for Summary Judgment Ex. G, 8/5/13. The form further provided that Mr. Valentino "underst[ood] that these [r]isks may be caused in whole or in part by [his] actions or inactions, the actions or inactions of others participating in the [e]vent, or the acts, inaction or negligence of [Appellee]" and that he "expressly assume[d] all such [r]isks and responsibility for any damages, liabilities, losses or expenses" that resulted from his participation in the event. *Id*. The liability waiver form also included a provision stating as follows: "[Mr. Valentino] further agree[s] that if, despite this [a]greement, he, or anyone on [his] behalf, makes a claim of [l]iability against [Appellee], [he] will indemnify, defend and hold harmless [Appellee] from any such [l]iability which [it] may [] incur[] as the result of such claim." *Id*.

In block capital lettering above the signature line, the liability waiver provided that Mr. Valentino's acceptance of the agreement confirmed that he read and understood its terms, that he understood that he would surrender substantial rights (including the right to sue), and that he signed the agreement freely and voluntarily. *Id*. Lastly, the form states that acceptance of the agreement constituted "a complete and unconditional release of all liability to the greatest extent allowed by law." *Id*.

completed and submitted a registration form to obtain a number and a bib to wear on the day of the race. Mr. Valentino electronically registered as a participant in the Triathlon on January 24, 2010.

On June 26, 2010, at approximately 8:30 a.m., Mr. Valentino entered the Schuylkill River to begin the first part of the Triathlon. He never completed the swimming portion of the competition or any other part of the race. The following day, on June 27, 2010, divers retrieved his body from the Schuylkill River.

Appellant (Mr. Valentino's widow) filed her original complaint on April 12, 2012, asserting wrongful death and survival claims against various defendants, including Appellee. Thereafter, she amended her complaint on June 22, 2012. All of the defendants filed preliminary objections on June 22, 2012. On July 27, 2012, the trial court sustained the defendants' preliminary objections and struck all references in Appellant's amended complaint that referred to outrageous acts, gross negligence, recklessness, and punitive damages. The court concluded that these allegations were legally insufficient since the alleged facts showed only ordinary negligence. In addition, the court struck paragraphs 22(a), (c), (e), and (m) in the amended complaint on grounds that those averments lacked sufficient specificity. The defendants answered the amended complaint and raised new matter on August 9, 2012.

Shortly after discovery commenced, the defendants moved for summary judgment in December 2012. The trial court denied that motion

on January 29, 2013. Eventually, Appellant stipulated to the dismissal of all defendants except Appellee. At the completion of discovery, Appellee again moved for summary judgment on August 5, 2013. The trial court granted Appellee's motion on September 30, 2013.[2] Appellant sought reconsideration but the trial court denied her request. Appellant then filed a timely notice of appeal on October 23, 2013. Pursuant to an order of court, Appellant filed a concise statement of errors complained of on appeal in accordance with Pa.R.A.P. 1925(b). Subsequently, the trial court explained its reasons for sustaining Appellee's preliminary objections in an opinion issued on March 18, 2014. In a separate opinion issued on August 14, 2014, the trial court set forth its rationale for granting Appellee's motion for summary judgment.[3]

On December 30, 2015, a divided three-judge panel of this Court affirmed, in part, and reversed, in part, the rulings issued by the trial court.

_____

[2] Because the trial court previously sustained preliminary objections to Appellant's claims of outrageous acts, gross negligence, recklessness, and punitive damages, we read the trial court's summary judgment order as dismissing claims of ordinary negligence that comprised Appellant's survival and wrongful death actions. In reaching this decision, the court relied upon the liability waiver executed by Mr. Valentino.

[3] This Court filed its decision in *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, 134 S.Ct. 2890 (2014) on August 12, 2013, holding that a non-signatory wrongful death claimant was not bound by an arbitration agreement signed by a decedent. Owing to our decision in *Pisano*, the trial court in its Rule 1925(a) opinion urged this Court to vacate the order granting summary judgment as to Appellant's wrongful death claims.

Specifically, the panel unanimously affirmed the trial court's order sustaining Appellee's preliminary objections. In addition, the panel unanimously agreed that: (1) the completion of discovery and the further development of the factual record defeated application of the coordinate jurisdiction rule and eliminated factual issues surrounding Mr. Valentino's execution of the liability waiver; (2) Appellant's failure to state viable claims involving recklessness, outrageousness, and intentional misconduct on the part of Appellee mooted Appellant's argument that a contractual waiver of such claims would be ineffective; and, (3) there was no basis to consider the sufficiency of the testimony of Appellant's expert since the trial court did not address that issue. Citing **Pisano**, however, two of the three members of the petite panel concluded that the liability waiver executed by Mr. Valentino did not apply to Appellant because she was not a signatory to the agreement.[4] Consequently, this Court vacated summary judgment in favor of Appellee as to Appellant's wrongful death claims.[5] Thereafter, both Appellant and Appellee requested reargument *en banc*. By order filed on

---

[4] Distinguishing the arbitration clause at issue in **Pisano**, the dissent found that Appellant's claims were subject to the liability waiver under which Mr. Valentino expressly assumed the risk of participating in the Triathlon since Appellant's wrongful death action required her to demonstrate that Mr. Valentino's death resulted from tortious conduct on the part of Appellee.

[5] Our ruling did not purport to alter the trial court's reliance on the liability waiver as grounds for entering summary judgment as to Appellant's survival claims.

March 11, 2016, this Court granted *en banc* reargument and withdrew our opinions of December 30, 2015. We now address the following questions:

1. Whether the [trial c]ourt erred in sustaining the [p]reliminary [o]bjections [] where, when the material facts set forth in the [a]mended [c]omplaint, as well as all reasonable inferences deducible therefrom, are accepted as true, it cannot be said with certainty that [Appellee's] actions were not sufficiently reckless, outrageous and/or egregious to warrant an award of punitive damages?

2. Whether the [trial c]ourt erred in sustaining the [p]reliminary [o]bjections [] and striking paragraph[s] 22(a), (c), (e), and (m) of the [a]mended [c]omplaint where these averments, and the [a]mended [c]omplaint in general, were sufficiently specific to enable [Appellee] to respond and prepare a defense?

3. Whether the [trial c]ourt erred in granting [Appellee's] second [m]otion for [s]ummary [j]udgment where the issue of waiver and release was previously decided in the [o]rder of January 29, 2013 that denied [Appellee's] first [m]otion for [s]ummary [j]udgment, and the [c]ourt was precluded by the coordinate jurisdiction rule from revisiting the question?

4. Whether the [trial c]ourt erred in granting [Appellee's] [m]otion for [s]ummary [j]udgment where, when the record is viewed in the light most favorable to [Appellant], questions of fact remain as to whether the purported release in question was effectively executed by the decedent and, if it was, whether it was enforceable?

5. Whether the [trial c]ourt erred in granting [Appellee's] [m]otion for [s]ummary [j]udgment where the report issued by Mark Mico fully and adequately addressed the questions of duty, breach of duty and causation and, in addition, he was fully qualified to render opinions in these regards?

Appellant's Substituted Brief at 7-8.

In the first issue, Appellant asserts that the trial court erred in sustaining the preliminary objections and striking all references to outrageous acts, gross negligence, and reckless conduct. Appellant also asserts that the trial court erred in dismissing her claims for punitive damages. The basis for these contentions is that, when the allegations set forth in the amended complaint are taken as true, the pleading asserts a claim that, "[Appellee] *intentionally* created a situation where swimmers [went] into a river with inadequate supervision and no reasonable means of rescue if they got into trouble." Appellant's Substituted Brief at 22 (emphasis in original).

The standard of review we apply when considering a trial court's order sustaining preliminary objections is well settled:

> [O]ur standard of review of an order of the trial court overruling or [sustaining] preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*HRANEC Sheet Metel, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 118 (Pa. Super. 2014).

In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005), *quoting*, *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984). "As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison*, 870 A.2d at 770. To support a claim for punitive damages, the plaintiff must show that the defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that the defendant acted, or failed to act, in conscious disregard of that risk. *Id.* at 772. "Ordinary negligence, involving inadvertence, mistake or error of judgment will not support an award of punitive damages." *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-984 (Pa. Super. 2005), *aff'd*, 922 A.2d 890 (Pa. 2007).

Appellant's amended complaint alleges that Mr. Valentino died while swimming in the Schuylkill River during the Triathlon. The amended complaint alleges further that Appellee was inattentive to the needs of the contestants, failed to inspect or maintain the event course, failed to warn of or remove dangerous conditions, failed to properly plan or organize the event, failed to follow safety standards, and failed to properly train and

supervise its employees. These allegations, however, averred nothing more than ordinary negligence arising from inadvertence, mistake, or error in judgment; they do not support a claim involving outrageous behavior or a conscious disregard for risks confronted by Triathlon participants. Hence, the trial court correctly dismissed Appellant's allegations of outrageous and reckless conduct and properly struck her punitive damage claims.

In the second issue, Appellant asserts that the trial court erred in sustaining the preliminary objections and striking paragraphs 22(a), (c), (e), and (m) from her amended complaint. Appellant maintains that these averments are sufficiently specific to enable Appellee to respond to Appellant's allegations and to formulate a defense in this case.

Contrary to Appellant's argument, we agree with the trial court's assessment that the challenged portions of the amended complaint are too vague and ambiguous to satisfy the requirements found in Pa.R.C.P. 1019. Under Rule 1019, "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa.R.C.P. 1019. "Pennsylvania is a fact-pleading state; a complaint must not only give the defendant notice of what the plaintiff's claim is and the grounds upon which it rests, but the complaint must also formulate the issues by summarizing those facts essential to support the claim." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011).

The challenged provisions of Appellant's amended complaint referred only to "dangerous conditions" (¶ 22(a)), "warnings" (¶ 22(c)), "failures to reasonably plan, operate, supervise, and organize the event" (¶ 22(e)), and "failures to employ adequate policies, procedures, and protocols in conducting the event" (¶ 22(m)) as the basis for her claims.  Upon review, we concur in the trial court's determination that this boilerplate language was too indefinite to supply Appellee with adequate information to formulate a defense.

Appellant cites the decision of the Commonwealth Court in **Banfield v. Cortes**, 922 A.2d 36 (Pa. Cmwlth. 2007) as supportive of her contention that the amended complaint set forth material facts with sufficient specificity.  **Banfield**, however, is distinguishable.  In that case, a group of electors filed suit alleging that the Secretary of the Commonwealth, in certifying the use of certain electronic systems in elections, failed to adopt uniform testing procedures that addressed the security, reliability, and accuracy of voting systems.  The Secretary requested an order directing the plaintiffs to re-plead their allegations with greater specificity.  In rejecting this request, the Commonwealth Court explained that in challenging the adequacy of the testing features inherent in the newly adopted electronic voting systems, the plaintiffs provided sufficient facts to enable the Secretary to prepare a defense.  **Id.** at 50.

Here, in contrast, Appellant referred vaguely, and without elaboration, to unspecified dangerous conditions, indefinite warnings, and generic failures to reasonably plan and employ adequate policies in carrying out the Triathlon. Moreover, even if Appellee possessed some knowledge of the facts around which Appellant's allegations centered, this alone would not relieve Appellant of her duty to allege material facts upon which she based her claims. *See Gross v. United Engineers & Constructors, Inc.*, 302 A.2d 370, 372 (Pa. Super. 1973). Thus, Appellant's reliance on *Banfield* is unavailing and we conclude that the trial court committed no error in striking paragraphs 22(a), (c), (e), and (m) from the amended complaint.

The final three claims challenge the entry of summary judgment in favor of Appellee. Our standard of review over such claims is well settled.

> Th[e] scope of review of an order granting summary judgment is plenary. Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

*Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221-1222 (Pa. 2002).

- 11 -

Appellant advances several arguments in support of her contention that the trial court erred in granting summary judgment. First, Appellant asserts that the coordinate jurisdiction rule precluded the trial court from addressing Appellee's motion since a prior summary judgment motion was denied. Second, Appellant contends that genuine issues of material fact regarding whether Mr. Valentino actually executed a liability waiver form barred the entry of summary judgment in Appellee's favor. Appellant next maintains that a plaintiff cannot contractually waive liability for reckless or intentional conduct and that, as a result, the liability waiver executed in this case is incapable of extinguishing such claims. Appellant also asserts that, pursuant to our prior decision in **Pisano**, a decedent's liability waiver is ineffective as to non-signatory third-party wrongful death claimants. Lastly, Appellant claims that the trial court erred in granting summary judgment because she offered the testimony of a qualified expert to address lingering questions of Appellee's duty, breach of duty, and injury causation. We address these contentions in turn.

We begin with Appellant's claim alleging that the coordinate jurisdiction rule precluded consideration of Appellee's motion for summary judgment since the trial court denied a prior summary judgment motion. The coordinate jurisdiction rule holds that, "upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor

trial judge." ***Zane v. Friends Hospital***, 836 A.2d 25, 29 (Pa. 2003). An exception to this rule applies, however, "when there has been a change in the controlling law or where there was a substantial change in the facts or evidence." ***Id.*** We agree with the trial court that the completion of discovery and the development of a more complete record defeated application of the coordinate jurisdiction rule in this case. Hence, this contention merits no relief.

Appellant next advances a claim asserting that genuine issues of fact surrounding Mr. Valentino's execution of the liability waiver preclude summary judgment in favor of Appellee. In developing this contention, Appellant draws our attention to differences between the version of the liability waiver introduced in support of Appellee's first motion for summary judgment and the version submitted in support of its second motion. Appellant's Substituted Brief at 37-41. Appellant notes that the second version was two and one-half pages in length while the first version was only two pages. Appellant also notes that the second version bore the date "2011" while the event occurred in 2010. Lastly, the second version included the words "Yes, I agree to the above waivers" above the signature line while the first version did not.

There is ample support for the trial court's finding that Mr. Valentino executed the liability waiver when he electronically registered for the Triathlon. ***See*** Trial Court Opinion, 8/14/14, at 4 ("In the second motion for

summary judgment, it is undisputed that a waiver was among the decedent's possessions, prior to being discovered in the Schuykill River."). The record shows that Appellee retained the services of ACTIVE Network (ACTIVE) to implement the online registration process for the Triathlon. ACTIVE implemented the required specifications for online registration, including guidelines for specific waiver and assumption of the risk language, supplied by Appellee and USA Triathlon (USAT), the national governing body of the sport of triathlon. USAT sanctioned the Triathlon because Appellee followed USAT registration guidelines.

Appellee also demonstrated that no one could participate in the Triathlon without registering online, a process that could not be completed without the execution of a liability waiver. It is not disputed that Mr. Valentino registered online by completing the required process. He paid his registration fee with a credit card issued in his name and for which he retained exclusive possession.

Appellee also offered the affidavit of Eric McCue, the general manager of ACTIVE, to explain why the appearance of the liability waiver varied between the submission of the first and second motions for summary judgment. According to Mr. McCue's affidavit, "ACTIVE's computer system condenses older registration and waiver documents for storage purposes, making any printed version of the older retained registration and waiver documents appear smaller than when they were viewed online by the

reader/registrant." Appellee's Motion for Summary Judgment Ex. L at ¶ 9, 8/5/13. Mr. McCue also stated that "the reader/registrant would view the online registration for the subject event exactly as it appears on Exhibit B [of Appellee's August 5, 2013 motion for summary judgment] on his or her computer screen." *Id.* at ¶ 10. Appellant offered no evidence to dispute Mr. McCue's affidavit testimony.

Lastly, Appellee relied upon the deposition testimony of witnesses to demonstrate that Mr. Valentino executed the liability waiver during the electronic registration process. At her deposition, Appellant admitted she had no reason to believe that Mr. Valentino did not read and understand the liability waiver or that he did not sign it during the registration process. In addition, Appellee pointed to the deposition testimony of Andrea Pontani, Mr. Valentino's friend. Ms. Pontani testified that Appellant and Mr. Valentino were aware of the liability waiver because they spoke with her about it before the competition, stating that Mr. Valentino signed the form and presented it in order to obtain his competitor's bib during the registration process on the day of the event. Based upon the forgoing, we agree with the trial court that Appellant presented no evidence raising a genuine issue of fact as to whether Mr. Valentino executed the liability waiver at issue in this case.

We turn next to Appellant's position that, even if Mr. Valentino executed the liability waiver, the agreement is unenforceable with regard to

claims asserting reckless or intentional conduct. Here, however, we have previously affirmed the trial court's determination that Appellant did not state viable claims involving reckless or intentional conduct. **See infra**. As such, Appellant's contention cannot serve as a basis for disturbing the trial court's summary judgment order, which dismissed allegations of ordinary negligence comprising Appellant's wrongful death and survival actions.[6]

Appellant forwards a claim that our decision in **Pisano** bars Appellee's reliance on a liability waiver to defend wrongful death claims asserted by a non-signatory statutory claimant. **See** Appellant's Substituted Brief at 45-47; **see also** Trial Court Opinion, 8/14/14, at 5. In **Pisano**, a nursing home resident signed a contract agreeing to submit all claims against the home to binding arbitration. When the resident died, the administrator of the resident's estate asserted wrongful death claims against the home and the home invoked the arbitration clause. The trial court denied the home's petition to compel arbitration. On appeal, this Court affirmed, concluding that the arbitration clause was not binding against wrongful death claimants who did not sign the agreement because they possessed a separate and distinct right of action. Pursuant to this holding, Appellant maintains that since she did not sign the liability waiver executed by her late husband, the

---

[6] Appellant does not challenge the substantive validity of the liability waiver as a bar to her claims of ordinary negligence. Consequently, we need not address the validity of the exculpatory provisions in the context of this case.

contractual waiver cannot be asserted as a bar to her wrongful death claims.

We disagree.

The statute authorizing wrongful death claims in Pennsylvania provides as follows:

> **§ 8301. Death action**
>
> **(a)General rule.--** An action may be brought [for the benefit of the spouse, children or parents of the deceased], under procedures prescribed by general rules, **to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another** if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa.C.S.A. § 8301 (emphasis added) (sometimes referred to as "Wrongful Death Act"). Eight decades ago, our Supreme Court interpreted a prior, but similar, version of the statute. The Court made clear that the statute contemplated that a claimant's recovery required a tortious act on the part of the defendant:

> [W]e have held that a right to recover must exist in the party injured when he died in order to entitle[] those named in the act to sue. **We have therefore held, in order that the death action impose no new and unjust burden on the defendant, that where the deceased would have been barred by contributory negligence, or by the statute of limitations, the parties suing for his death are likewise barred. We have announced the principle that the statutory action is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action.** Its derivation, however, is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute

- 17 -

free from personal disabilities arising from the relationship of the injured party and tort-feasor.

**Kaczorowski v. Kalkosinski**, 184 A. 663, 664 (Pa. 1936) (internal citations omitted; emphasis added).

Our decision in **Pisano** limited a decedent's authority to diminish or alter a non-signatory third-party claimant's procedural election to pursue a claim in the forum of his or her choice. That decision, however, did not purport to undermine the fundamental principle that both an estate in a survival action, and a statutory claimant in a wrongful death action, shoulder the same burden of proving that tortious conduct on the part of the defendant caused the decedent's death. Under **Pisano**, "wrongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights." **Pisano**, 77 A.3d at 659-660. Thus, while a third party's wrongful death claim is not derivative of the decedent's right of action, a wrongful death claim still requires a tortious injury to succeed.

As suggested above, Pennsylvania case law has long held that a wrongful death claimant's substantive right to recover is derivative of and dependent upon a tortious act that resulted in the decedent's death. Our reasoning in **Sunderland v. R.A. Barlow Homebuilders**, 791 A.2d 384 (Pa. Super. 2002), *aff'd*, 838 A.2d 662 (Pa. 2003) illustrates this point:

> A wrongful death action is derivative of the injury which would have supported the decedent's own cause of action and is dependent upon the decedent's cause of action being viable at the time of death. [**Moyer v. Rubright**, 651 A.2d 1139, 1143 (Pa. Super. 1994)]. "As a general rule, no action for wrongful

death can be maintained where the decedent, had he lived, could not himself have recovered for the injuries sustained." ***Ingenito v. AC & S, Inc.***, 633 A.2d 1172, 1176 (Pa. Super. 1993). Thus, although death is the necessary final event in a wrongful death claim, **the cause of action is derivative of the underlying tortious acts that caused the fatal injury**. ***Id.***

***Sunderland***, 791 A.2d at 390-391 (emphasis added; parallel citations omitted).

Applying these settled principles in the present case, we conclude that a decedent may not compromise or diminish a wrongful death claimant's right of action without consent. Nevertheless, a third-party wrongful death claimant is subject to substantive defenses supported by the decedent's actions or agreements where offered to relieve the defendant, either wholly or partially, from liability by showing that the defendant's actions were not tortious. Here, Mr. Valentino, in registering online for the Triathlon, executed a detailed liability waiver under which he expressly assumed the risk of participating in the Triathlon and agreed to indemnify Appellee for liability stemming from his involvement in the event. The valid liability waiver executed by Mr. Valentino was available to support Appellee's claim that Mr. Valentino knowingly and voluntarily assumed the risk of taking part in the competition and that, therefore, Appellee's actions were not tortious. Since Appellant's wrongful death claims required her to establish that Appellee's conduct was tortious, the trial court did not err in granting summary judgment in favor of Appellee.

Appellant construes **Pisano** as holding that a wrongful death claimant's rights are wholly separate, in all contexts and for all purposes, from not just the "rights" of a decedent but also the injuries sustained by a decedent. This reading of **Pisano** conflates the concept of a right of action under Pennsylvania's Wrongful Death Act, referring to the non-derivative right of a statutory claimant to seek compensation, with the principle that a claimant's substantive right to obtain a recovery always remains, even in the wake of **Pisano**, "depend[ant] upon the occurrence of a **tortious** act." **Pisano**, 77 A.3d at 654 (emphasis added). The issue in **Pisano** was whether a wrongful death claimant should be bound by an arbitration clause that he did not sign. This is a uniquely procedural issue that differs greatly from the enforcement of a valid liability waiver such as the one at issue in the present case. An arbitration clause dictates the forum where a litigant may present his claim. The terms of such a clause do not fix substantive legal standards by which we measure a right to recovery. Because the decedent signatory agreed to submit his claim to arbitration, his claim is subject to the compulsory provisions of the agreement. A non-signatory wrongful death claimant, on the other hand, cannot be compelled to present his claim to an arbitrator since he has not consented to arbitration and since he possesses an independent, non-derivative right to air his claim in the forum of his choice.

A liability waiver, however, operates quite differently from an arbitration clause. By executing a liability waiver, the decedent signatory acknowledges and assumes identified risks and pledges that the defendant will not be held liable for resulting harms. If the decedent executes the waiver in a knowing, intelligent, and voluntary manner (as here), the waiver is deemed valid and it shifts the risk of loss away from the defendant and onto the decedent. In effect, an enforceable waiver under which the decedent assumes specified risks transforms the nature of the defendant's conduct *vis-à-vis* the decedent from tortious to non-tortious. Since ***Pisano*** retains the requirement that the decedent's death result from a tortious act, even non-signatory wrongful death claimants remain subject to the legal consequences of a valid liability waiver.

Appellant also overinflates the importance of the presence of a wrongful death claimant's signature when evaluating the enforceability of a liability waiver. Under ***Pisano***, a wrongful death claimant possesses an independent, non-derivative right of action that cannot be subject to compulsory arbitration in the absence of consent. Thus, to enforce an arbitration clause in the wrongful death context, the claimant's signature is necessary to demonstrate that she agreed to submit her claim to binding arbitration. The same is not true for a liability waiver, however. As explained above, a valid waiver signed only by the decedent transfers the risk of harm from the defendant to the decedent, effectively rendering the

defendant's conduct non-tortious. Since the wrongful death claimant's substantive right of recovery presupposes tortious conduct on the part of the defendant, the claimant's signature on the waiver is unnecessary.

Although we have uncovered no recent Pennsylvania case law that discusses the application of a valid waiver in a subsequent wrongful death action, several decisions from California are instructive on this point. These cases illustrate that, while a valid waiver does not bar a wrongful death claim, it can support a defense asserting that the alleged tortfeasor owed no duty to the decedent:

> Although a wrongful death claim is an independent action, wrongful death plaintiffs may be bound by agreements entered into by decedent that limit the scope of the wrongful death action. Thus, for example, although an individual involved in a dangerous activity cannot by signing a release extinguish his heirs' wrongful death claim, the heirs will be bound by the decedent's agreement to waive a defendant's negligence and assume all risk.

*Ruiz v. Podolsky*, 237 P.3d 584, 593 (Cal. 4th 2010). Hence, where a decedent executes a valid waiver:

> the express contractual assumption of the risk, combined with the express waiver of defendants' negligence, constitute[s] a complete defense to the surviving heirs' wrongful death action. This is different than holding th[at the wrongful death] action is barred.

*Scroggs v. Coast Community College Dist.*, 193 Cal.App.3d 1399, 1402 (Cal. App. 4th Dist. 1987); *Eriksson v. Nunnick*, 233 Cal.App.4th 708 (Cal. App. 4th Dist. 2015); *Madison v. Superior Court* 203 Cal.App.3d 589 (Cal. App. 2nd Dist. 1988).

These cases align with Pennsylvania law in a way that the decisional law of other states does not. For example, in **Gershon v. Regency Diving Center, Inc.**, 845 A.2d 720 (N.J. Super. 2004), the Appellate Division of the New Jersey Superior Court rejected the rationale in **Madison** and the other California cases, noting that the California approach was "internally inconsistent" since it allowed claimants to file a lawsuit that ultimately would not succeed. This reasoning constitutes a one-dimensional view of the issue. Take, for example, a case in which the decedent executes a valid liability waiver, as here. Thereafter, the defendant raises a successful assumption of the risk defense against the decedent's estate in a survival action. Under the holding in **Gershon**, the defendant cannot raise the defense in a companion wrongful death action. **Gershon** thus trades one "inconsistency" for another since it allows a wrongful death action to proceed in the face of a valid waiver that precludes a related survival action. Since the same underlying conduct by the defendant is the focus of scrutiny in this hypothetical situation, it is entirely consistent to reject a wrongful death claim where a valid waiver precludes recovery in a related survival action.[7]

_____

[7] This Court recently required consolidation of related wrongful death and survival actions since wrongful death beneficiaries cannot be compelled to arbitrate wrongful death claims. **Taylor v. Extendicare Health Facilities, Inc.**, 113 A.3d 317 (Pa. Super. 2015), *appeal granted*, 122 A.3d 1036 (Pa. 2015). However, our Supreme Court overruled our decision in **Taylor**, concluding that the Federal Arbitration Act, 9 U.S.C. § 2, preempted application of Pa.R.C.P. 213(e) (requiring consolidation of survival and

*(Footnote Continued Next Page)*

Our conclusion that Appellee may rely on a liability waiver signed only by the decedent to defeat Appellant's wrongful death claims is undiminished by Pennsylvania case law holding that a settlement and release agreement does not bind non-signatories. *See*, *e.g.*, *Buttermore v. Aliquippa Hospital*, 561 A.2d 733 (Pa. 1989). In *Buttermore*, James Buttermore sustained injuries in an automobile accident. Eventually, he resolved his claims against the tortfeasor in exchange for the sum of $25,000.00 and executed a release and settlement agreement in which he agreed to release any and all persons from liability, whether known or unknown. Later, Buttermore and his wife initiated an action against Aliquippa Hospital and certain physicians claiming that treatment he received aggravated the injuries he sustained in the accident. The defendants moved for summary judgment on the strength of the release. Our Supreme Court held that the release barred Buttermore's claims against all tortfeasors, including those who were unnamed. The Court further held, however, that Buttermore's wife had an independent cause of action for loss of consortium, which was not barred by the release since she did not sign the agreement.

A pair of examples illustrates the distinction between the situation in *Buttermore* and the situation presently before us. In the first example, the

*(Footnote Continued)* ───────────────

wrongful death actions at trial) and required arbitration of survival claims where a valid and enforceable arbitration clause exists. *Taylor v. Extendicare Health Facilities, Inc.*, 2016 WL 5630669 (Pa. 2016).

driver of car A operates his vehicle on a public highway. He is injured after a rear-end collision caused by the driver of car B. Litigation ensues between the two drivers and, eventually, the driver of car A resolves his claims against the driver of car B for the sum of $30,000.00. At that time, the driver of car A executes a release and settlement agreement, releasing all persons from liability – whether known or unknown – for claims stemming from injuries and losses he sustained in the accident. His spouse does not sign the release. As in **Buttermore**, the release signed by the driver of car A bars all claims he initiates in the future but does not bar loss of consortium claims or wrongful death claims (should he succumb to his injuries) brought by his spouse, who possesses independent causes of action. In this scenario, the execution of the release manifests the driver of car A's agreement to forgo all future claims but does not establish his assumption of the risk of operating his vehicle. Nothing in the release suggests that the driver of car A intended to shift the risk of loss away from the driver of car B and onto himself. Indeed, the execution of the release **after** the injury-causing accident leaves no room for the inference that he assumed this risk of negligence on the part of the driver of car B. Since nothing in the release precludes a finding that the driver of car B acted tortiously, the release has no preclusive effect on the spouse's right to seek damages in the context of a subsequent loss of consortium or wrongful death action.

In the second example, the driver of car A decides to participate in a demolition derby. As a condition of entry, he voluntarily executes a liability waiver under which he assumes the risk of participation in the event and waives all potential claims against other participants and event organizers. Again, the spouse of the driver of car A does not sign the liability waiver. During the demolition derby, the driver of car A sustains injuries and eventually dies as a result of a collision with another participant. In this scenario, loss of consortium and wrongful death claims asserted by the spouse of the driver of car A are subject to the liability waiver. This is because the driver of car A expressly manifested his intent to assume the risk of participating in the demolition derby, thereby shifting the risk of loss or injury away from other participants and event organizers. Unlike the release and settlement agreement in the first example that said nothing about assumption of the risk or any other substantive basis to oppose tort liability, the liability waiver in this hypothetical supports a complete bar to financial responsibility for injury and losses and bears directly on the formula by which we assess whether a defendant acted tortiously in causing damages. Because even non-signatory wrongful death claimants bear the burden of proving that tortious conduct caused the decedent's death, their claims are subject to liability waivers under which the deceased assumed the

risk of engaging in a particular activity.[8]  As the circumstances before us more closely reflect this second example, the instant appeal calls for application of the principles alluded to in prior Pennsylvania cases and specifically articulated in the California line of authority.  **See infra**.  Thus, we are not persuaded that Pennsylvania case law construing the applicable scope of release and settlement agreements undermines our conclusion that Appellant's wrongful death claims are subject to the liability waiver signed by Mr. Valentino.

For related reasons, we conclude that the decision in **Brown v. Moore**, 247 F.2d 711 (3rd Cir. 1957), *cert. denied*, 355 U.S. 882 (1957) is also unpersuasive.  In that case, Brown, a neurotic, entered a sanitarium for treatment which included electrical shock therapy.  While in the sanitarium, Brown fell down a flight of stairs.  After the fall, sanitarium employees picked Brown up by his extremities, causing paralysis.  Upon entry into the

_____

[8] Although strictly construed, Pennsylvania law recognizes the enforceability of valid liability waivers, particularly in cases where the injured party elects to engage in activities that entail an obvious risk of injury or loss.  **See, e.g., Hinkal v. Pardoe**, 133 A.3d 738 (Pa. Super. 2016) (*en banc*) (gym membership), *appeal denied*, 2016 WL 3910827 (Pa. 2016).  We would substantially reduce the utility of liability waivers if we were to hold that they are enforceable only against signatories, but not against non-signatory wrongful death claimants.  Moreover, it would be extremely impractical to expect defendants to acquire signatures from all such potential plaintiffs.  Indeed, it should almost go without saying that event organizers and hosts of activities that entail a risk of injury would likely cease operations if valid liability waivers could not be enforced against non-signatory statutory claimants such as Appellant.

sanitarium, Brown and his wife signed a release relieving the sanitarium and its employees from liability for injuries resulting from his mental health treatment, including electro-shock therapy or similar treatments. As Brown's widow and the executrix of his estate, Brown's wife brought claims under the Wrongful Death Act on behalf of herself and her three minor children, as well as a Survival Act claim. The court's opinion in **Brown** suggested that the release was sufficient to alleviate the defendants' liability under the Survival Act and to defeat Brown's widow's claims under the Wrongful Death Act since the decedent and Brown's wife signed the agreement. Nevertheless, the court opined that Brown's children could recover on their wrongful death claims since they were non-signatories. We find it significant, however, that immediately before reaching this conclusion, the court concluded that Brown's treatment following his fall down the stairs was unrelated to his treatment for his mental health issues, which was the subject of his release. In essence, then, the court held that while Brown may have assumed the risk of electro-shock therapy or similar treatments, he did not assume the risk of faulty medical treatment for injuries sustained during his fall. Accordingly, **Brown** does little to support Appellant's claim before us.[9]

---

[9]   As our analysis suggests, courts must exercise great care and caution to differentiate between an agreement that addresses only the procedural

*(Footnote Continued Next Page)*

The learned Dissent rejects the conclusion that assumption of the risk and the liability waiver support the trial court's entry of summary judgment in favor of Appellee. The Dissent instead argues that, "*Pisano* is clear that a wrongful death action is an independent cause of action, created by statute, and is not derivative of the decedent's rights at the time of death." Dissenting Opinion at 8. This position overlooks settled Supreme Court precedent and over eight decades of Pennsylvania case law holding that wrongful death actions are derivative of "the same tortious act which would have supported the injured party's own cause of action." *Kaczorowski*, 184 A. at 664 (noting that wrongful death action would be barred by affirmative defenses such as contributory negligence or statute of

*(Footnote Continued)* _____

rights of a signatory (*i.e.*, an arbitration agreement) or a signatory's right to pursue further claims (*i.e.*, a release and settlement agreement) from an agreement that goes further and unambiguously manifests a signatory's intent to assume the risk of involvement in a particular event or activity (*i.e.*, a liability waiver). This is because the former binds only the parties to the agreement while the latter extends to non-signatory third-parties. We accord broader reach to liability waivers under which the signatory assumes a particular risk because, where valid, such agreements support a complete bar to tort liability and therefore form an important part of the assessment of whether tortious conduct brought about injury, loss, or death. A court's examination of this issue necessarily will involve the nature and purpose of the agreement, as expressed in the exculpatory language of the instrument, together with the circumstances under which the parties entered the contract. The analysis should not be limited simply to the label applied to the agreement and, occasionally, will ask whether the signatory expressly assumed the precise risk that resulted in his injury. In *Brown*, for example, we doubt whether the release should have been given preclusive effect at all since the precise injury sustained in that case fell outside the scope of the exculpatory waiver.

limitations); *see also Sunderland*, 791 A.2d at 390-391; *Moyer*, 651 A.2d at 1143; *Ingenito*, 633 A.2d at 1176. Not only does the Dissent ignore binding Pennsylvania precedent, the premise of the Dissent's conclusion is unavailing.

Citing *Pisano*, the Dissent asserts that Appellant is not "bound" by the liability waiver executed by Mr. Valentino and, therefore, the agreement does not bar her from bringing a wrongful death action. Respectfully, these contentions miss the point. First, Appellant filed a wrongful death action in the venue of her choosing and no one asserts that the liability waiver precluded her from doing so. Second, since it is undisputed that Mr. Valentino knowingly and voluntarily executed the liability waiver, the issue of whether Appellant was "bound" by the waiver agreement is irrelevant to whether Appellee was entitled to an order granting summary judgment as to the negligence claims asserted in Appellant's wrongful death action. We explain.

The record undeniably contains a valid waiver agreement. As such, the agreement itself constitutes tangible and, indeed, overwhelming proof that Mr. Valentino intelligently and willingly assumed the risk of participating in the Triathlon. This is so **regardless** of whether Appellant was "bound" by the agreement. The law is clear that a wrongful death claimant's recovery must derive from a tortious actious act. *Sunderland*, 791 A.2d at 390-391. As even the Dissent concedes, "[a] wrongful death claimant [must] prove

negligence." Dissenting Opinion at 8, fn.6. The law is also clear that the doctrine of assumption of the risk is a function of the duty analysis required in any negligence action and that summary judgment may be entered where the record discloses an absence of general issues of material fact. ***Thompson v. Ginkel***, 95 A.3d 900, 906-907 (Pa. Super. 2014), *appeal denied*, 108 A.3d 36 (Pa. 2015). Since assumption of the risk serves as a complete bar to tort recovery, Pa.R.C.P. 1035.2(2) permitted Appellee to seek summary judgment based upon Mr. Valentino's voluntary and knowing assumption of the hazards attendant to triathlon participation. ***See Staub v. Toy Factory, Inc.***, 749 A.2d 522, 527 (Pa. Super. 2000).[10]

---

[10] In ***Staub***, this Court explained:

> For summary judgment purposes, affirmative defenses are generally decided under Pa.R.Civ.P. 1035.2(1), where it is the moving party's burden to establish the defense as a matter of law. Under [***Howell v. Clyde***, 620 A.2d 1107 (Pa. 1993) and ***Hardy v. Southland Corp.***, 645 A.2d 839 (Pa. Super. 1994), *appeal denied*, 652 A.2d 1324 (Pa. 1994)], however, assumption of risk is now considered part of a "no-duty" analysis. As such, the doctrine now falls under the second type of summary judgment motion, described in Pa.R.Civ.P. 1035.2(2). Under Rule 1035.2(2), a party may obtain summary judgment by pointing to the adverse party's lack of evidence on an essential element of the claim. . . . One of the essential elements of a negligence claim is that the defendant owes the plaintiff a duty of care. Under Rule 1035.2(2), the defendant's method for pointing to a lack of evidence on the duty issue is to show that the plaintiff assumed the risk as a matter of law. This process will entail gathering and presenting evidence on the plaintiff's behavior, and attempting to convince the court that the plaintiff knew the risk and proceeded to encounter it in a manner

*(Footnote Continued Next Page)*

In this case, Appellant does not dispute that the liability waiver constituted an express assumption of the risk by Mr. Valentino. This confirms that Appellee owed no legal duty to Mr. Valentino and, therefore, Appellee cannot be found to be negligent. It follows, then, that the waiver agreement not only defeated the negligence claims asserted in the context of Appellant's survival action, but also the negligence claims asserted in the context of Appellant's wrongful death action. Appellee's right to summary judgment simply did not depend upon Appellant's execution of the agreement.[11]

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯

> showing a willingness to accept the risk. Thus, for all practical purposes, the process for showing "no-duty" assumption of the risk under Rule 1035.2(2) is indistinguishable from showing assumption of the risk as an affirmative defense under Rule 1035.2(1).

**_Staub_**, 749 A.2d at 527. For purposes of proving negligence, the only legal duty referred to in this case is the one allegedly owed by Appellee to Mr. Valentino. The Dissent identifies no source and no proof of a separate and independent legal duty owed by Appellee to Appellant.

More broadly, we note that the Dissent places great weight on its contention that Appellant's wrongful death action is not derivative of Mr. Valentino's injuries. Notwithstanding, even a brief review of Appellant's amended complaint and the submissions of the parties reveals that all of the allegations of negligence underpinning Appellant's wrongful death claims involve legal duties, alleged breaches, proximate causation, and harms that focus exclusively upon Mr. Valentino. Thus, in substantive terms, the conclusion that Appellant's wrongful death claims are derivative of the injuries sustained by Mr. Valentino is inescapable.

[11] The Dissent also makes the point that wrongful death claims are intended to compensate for the loss of the decedent. Wrongful death claims,
_(Footnote Continued Next Page)_

We turn now to Appellant's claim that the trial court erred in granting summary judgment because she offered the testimony of a qualified expert to address lingering questions of Appellee's duty, breach of duty, and injury causation.  Here, Appellant relies on Mark Mico, an experienced triathlete, race director, and race management consultant.  Mr. Mico concluded that Appellee's negligence caused Mr. Valentino to drown in the Schuylkill River.  Among other things, Mr. Mico stated in his report that Appellee failed to provide a sufficient number of lifeguards and allowed too many swimmers into the water during wave launches.  He also stated that contestants were not permitted to wear buoyant wetsuits and that Appellee failed to provide to lifeguards appropriate instruction and training in open water safety.  Mr. Mico opined that swimmers were given black swimming caps that offered poor visibility in open water.  Finally, Mr. Mico stated that most lifeguards were familiar only with conditions in swimming pools, not open water.

In this case, the trial court granted summary judgment in favor of Appellee based upon the liability waiver executed by Mr. Valentino.  The trial

_(Footnote Continued)_ ────────────

however, were not intended to place new and unjust burdens on defendants and compensation is due only when tortious conduct results in death.  In the present case, the trial court properly entered summary judgment because Appellant cannot demonstrate that Appellee was negligent, as Appellee owed no duty to Mr. Valentino.  Thus, the goal of compensation does not support reversal of the trial court's order.  This holding does not "eviscerate" but wholly aligns with our Wrongful Death Statute, which imposes liability only where the defendant's tortious conduct causes death.  **_Compare_** Dissenting Opinion at 5.

court did not consider the contents of Mr. Mico's report and did not discuss the issue in its Rule 1925(a) opinion. Nonetheless, since our scope of review is plenary, we may and must examine Mr. Mico's report to determine if it precludes the entry of summary judgment based on the liability waiver. We conclude that it does not.

Assuming for purposes of argument that Mr. Mico's expert report establishes a *prima facie* case of negligence, the liability waiver operated to release Appellee from liability for negligence, and Appellant does not challenge the validity of the release on that basis. Furthermore, Mr. Mico's conclusory opinion that Appellee's "conduct was to such a degree of carelessness that it amounts to reckless disregard for the safety of its participants[,]" does not permit Appellant to avoid the liability waiver. Report of Michael Mico, 6/30/13, at unnumbered 7. As we previously determined, the trial court properly held that the facts alleged in the amended complaint did not support claims that Appellee acted outrageously, recklessly, or intentionally, and dismissed such claims with prejudice. Expert opinion to the contrary cannot alter that legal assessment. In particular, Mr. Mico's report did not identify specific actions or omissions that rose to the level of reckless disregard. Reckless disregard requires a different state of mind and a substantially greater knowledge of impending risks than ordinary negligence, not simply a higher degree of carelessness, a

distinction the expert failed to appreciate.[12] ***See Tayar v. Camelback Ski Corp.***, 47 A.3d 1190, 1200 (Pa. 2012) ("Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence.") Consequently, nothing in Mr. Mico's expert report alters our determination that the liability waiver is dispositive of Appellant's wrongful death and survival claims.

In sum, Pennsylvania law distinguishes a wrongful death claimant's non-derivative right to bring an action from her derivative right to recover damages based upon a defendant's tortious conduct. This distinction allows a defendant, like Appellee, to assert an express, contractual assumption of risk based upon a valid liability waiver against a wrongful death claimant, even where the claimant does not sign the liability waiver agreement. Applying these settled principles to the case at hand, the order granting summary judgment in favor of Appellee fully comports with prevailing

---

[12] Section 500 of the Restatement (Second) of Torts defines reckless disregard of safety as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Restatement (Second) of Torts § 500.

Pennsylvania law. Thus, we affirm the court's summary judgment order dismissing Appellant's wrongful death and survival claims.

Order affirmed.

Gantman, P.J., Bender, P.J.E., Bowes, Shogan and Ott, JJ., join this Opinion.

Ford Elliott, P.J.E., files a Concurring and Dissenting Opinion in which Panella and Lazarus, JJ. join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2016