J-14-2018 [OISA: Baer, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| MICHELE VALENTINO, AS ADMINISTRATRIX OF THE ESTATE OF DEREK VALENTINO, DECEASED, AND MICHELE VALENTINO, IN HER OWN RIGHT, | : : : : : | No. 17 EAP 2017 |
| | : | Appeal from the Judgment of Superior Court entered on November 15, 2016 at No. 3049 EDA 2013 affirming the Order entered on September 30, 2013 in the Court of Common Pleas, Philadelphia County, Civil Division at No. 1417 April Term, 2012. |
| Appellant | : : : : : : : | |
| v. | : : | ARGUED: May 15, 2018 |
| | : | |
| PHILADELPHIA TRIATHLON, LLC, | : : | |
| Appellee | : : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE DOUGHERTY**            **DECIDED: June 18, 2019**

The question before the Court is whether the Superior Court erred when it determined a pre-injury exculpatory waiver signed by a triathlon participant provides a complete defense to claims brought by the participant's non-signatory heirs pursuant to the Wrongful Death Act, 42 Pa.C.S. §8301. We would find the waiver is unenforceable against the heirs and does not preclude their wrongful death action. We would therefore reverse the Superior Court's decision and remand to the trial court for further proceedings.

In 2010, appellee Philadelphia Triathlon, LLC, organized the Philadelphia Insurance Triathlon Sprint (the Triathlon). The Triathlon consisted of three events: (1) a 0.5 mile swim; (2) a 15.7 mile bicycle race; and (3) a 3.1 mile run. The swim portion of the Triathlon took place in the Schuylkill River in Philadelphia, Pennsylvania. As a

participant in the Triathlon, Decedent, Derek Valentino, registered as a participant for the Triathlon and executed a Waiver and Release of Liability (the Waiver) by affixing his electronic signature to an online registration form.

On race day, at approximately 8:30 a.m., Decedent entered the Schuylkill River for the swim portion of the Triathlon, but he did not complete the swim and, on the following day, his body was recovered from the Schuylkill River. There is no dispute Decedent drowned in the river while participating in the Triathlon. *See Valentino v. Phila. Ins. Co.*, No. 120401417, 2014 WL 4796614, at *1 (Pa. Com. Pl. Aug. 26, 2014).

Appellant Michele Valentino filed a lawsuit in her individual capacity and as Administratrix of the Estate of Derek Valentino, against several defendants, including appellee, asserting survival claims on Decedent's behalf and wrongful death claims on her own behalf and that of her children.[1] *See* Amended Complaint at ¶¶ 26-28, 34-36, *citing* 42 Pa.C.S. §8302 (Survival Act provides "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant . . ."); Amended Complaint at ¶¶29-33, 37-41, *citing* 42 Pa.C.S. §8301(a), (b) (Wrongful Death Act provides spouse, children or parents of decedent can bring action "to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another").[2] In response to preliminary objections, the trial court entered

---

[1] Appellant stipulated to the dismissal of all defendants other than appellee on January 29, 2013, and they are not involved in this appeal. *See* Stipulation of Dismissal Without Prejudice.

[2] In Pennsylvania, wrongful death claims are separate and distinct from survival claims, although both involve allegations of negligence against the defendant. *See Dubose v. Quinlan*, 173 A.3d 634, 637 (Pa. 2017); *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994) (discussing differences between survival and wrongful death claims); *Tulewicz v. Se. Pa. Transp. Auth.*, 606 A.2d 427, 431 (Pa. 1992); ("the two actions are designed to compensate two different categories of claimants"); *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 654 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014) ("Pennsylvania courts have repeatedly distinguished wrongful death claims from survival

orders striking from the complaint all references to outrageous acts, gross negligence and recklessness. The trial court also struck appellant's claim for punitive damages. Remaining in the case were several allegations of ordinary negligence, specifically, that appellee failed to: make a reasonable inspection of the premises and event course; remove or take measures to prevent dangerous conditions; follow rules, regulations, policies and procedures governing safety standards; properly train the Triathlon's agents, servants and employees with respect to safety rules, regulations, policies and procedures; properly supervise the Triathlon's employees to ensure the Triathlon was conducted in a reasonable and safe manner; properly construct or design a safe event route to avoid dangerous conditions; regulate or control the number of individuals participating in each phase of the race simultaneously; have proper rules, regulations, policies and procedures for the timely recognition and response of event participants in distress and need of rescue; and have adequate safety personnel on hand for each aspect of the event. *See id.* at ¶ 22(b), (d) & (f) - (l).

Thereafter, appellee filed an answer with new matter, claiming Decedent was sufficiently negligent himself to completely bar appellant's recovery, or alternatively, to reduce appellant's recovery in accordance with the amount of comparative negligence attributed to Decedent. *See* Answer with New Matter at ¶43, *citing* Comparative Negligence Act, 42 Pa.C.S. §7102. In addition, appellee asserted the complete defense of assumption of risk, claiming it owed no duty to Decedent or his survivors based on Decedent's execution of the Waiver. *Id.* at ¶¶44, 46.

---

claims"). The survival claim is the "continuation of a cause of action that accrued to the plaintiff's decedent while the decedent was alive . . .. On the other hand, a wrongful death action accrues to the decedent's heirs when the decedent dies of such an injury . . .." *Dubose*, 173 A.3d at 637. As explained more fully *infra*, a wrongful death claim is an independent action which belongs to the decedent's heirs for damages aimed to compensate members of a decedent's family for their loss. *Tulewicz*, 606 A.2d at 431.

## a. Summary Judgment

On September 30, 2013, the trial court granted appellee's motion for summary judgment and dismissed all of appellant's remaining claims with prejudice. On appellant's motion for reconsideration, the court opined summary judgment on the survival action was proper based on the Waiver. *Valentino,* 2014 WL 4796614, at *2. The court reversed itself regarding appellant's wrongful death action, and opined that claim should be remanded for further proceedings based on the Superior Court's decision in *Pisano v. Extendicare Homes, Inc.,* 77 A.3d 651, 663 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014) (resident-decedent's contractual agreement with nursing home to arbitrate all claims was not binding on non-signatory wrongful death claimants). *Id.* at *3. In recommending the wrongful death action be remanded, the trial court observed "a decedent can contract away his own right to recover in court under a survival action, [but] he cannot similarly alienate the rights of third parties to recover in their own wrongful death actions." *Id.*

## b. Superior Court

A divided *en banc* panel of the Superior Court subsequently affirmed summary judgment on all claims. *Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483 (Pa. Super. 2016).[3] The majority reasoned that, for a decedent's heirs to recover damages in a wrongful death action, there must be an underlying tortious act by the defendant. *See id.* at 492-93, *quoting Kaczorowski v. Kalkosinski,* 184 A. 663, 664 (Pa. 1936) (". . . a right to recover must exist in the party injured when he died in order to entitle[] those named in

---

[3] Judge Olson authored the majority opinion joined by P.J. Gantman, P.J.E. Bender, and Judges Bowes, Shogun and Ott.

the act to sue. . . . [W]here the deceased would have been barred by contributory negligence, or by the statute of limitations, the parties suing for his death are likewise barred.") (internal citations omitted). The majority further held its own decision in *Pisano*, which allowed non-signatory wrongful death claimants to file a court action despite their decedent's execution of an arbitration agreement, is limited to the facts of that case. *Id.* at 493. The majority opined an heir's right to recover for her decedent's wrongful death is dependent upon the existence of a tortious act that caused the death, stating "while a third party's wrongful death claim is not derivative of the decedent's right of action, a wrongful death claim still requires a tortious injury to succeed." *Id.* Underpinning the *en banc* majority's analysis was its position that arbitration and settlement agreements "bind[] only the parties to the agreement while the [liability waiver] extends to non-signatory third-parties." *Id.* at 497 n.9. The *en banc* majority considered the Waiver to be an express assumption of all risks which eliminated any legal duty otherwise owed to anyone by appellee, creating a complete bar to tort liability.[4] *Id.*

Appellant filed a petition for allowance of appeal and this Court granted review of two questions:

> Whether the Superior Court erred when it determined that a waiver of
> liability form, executed solely by the decedent, and stating the signer

---

[4] In a concurring and dissenting opinion joined by Judges Panella and Lazarus, P.J.E. Ford Elliott determined *Buttermore v. Aliquippa Hospital,* 561 A.2d 733 (Pa. 1989) was instructive on the analysis of the Waiver, despite the majority's effort to distinguish it. *Valentino,* 150 A.3d at 501-02 (Ford Elliott, P.J.E., concurring and dissenting). Judge Ford Elliott noted the Waiver is similar to the release in *Buttermore,* and the non-signatory heir in that case had an independent right to sue for the injury she suffered as a result of her decedent's death. *Id.* Judge Ford Elliott stated the majority's holding the Decedent's own assumption of risk created a complete defense to his heirs' wrongful death action would "eviscerate the Pennsylvania wrongful death statute which creates an independent and distinct cause of action, not derivative of the decedent's rights at time of death." *Id.* at 502. Judge Ford Elliott would also have relied on *Pisano* to reverse summary judgment. *Id.* at 504.

assumes all risks of participation in a triathlon, also binds his heirs, thereby precluding them from bringing a wrongful death action?

Whether the defense of assumption of risk should be abolished except in those situations where it is specifically permitted by the Comparative Negligence Act?[5]

*Valentino v. Phila. Triathlon, LLC*, 168 A.3d 1283 (Pa. 2017) (*per curiam*).

Our standard and scope of review on appeal from summary judgment are well-established. "[A]n appellate court may reverse the entry of summary judgment only where it finds that the trial court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to judgment as a matter of law." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1004 (Pa. 2003), *citing Pappas v. Asbel*, 768 A.2d 1089 (Pa. 2001). In determining whether the lower court erred in granting summary judgment, the standard of review is *de novo* and the scope of review is plenary. *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 657 (Pa. 2009), *citing LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009). We consider the parties' arguments with these standards in mind.

**II.**

Appellant argues the Superior Court erred in determining the Waiver, which was executed solely by Decedent, barred his heirs' wrongful death action. Appellant first notes wrongful death actions are statutorily authorized in Pennsylvania:

**(a) General rule.**--An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an

---

[5] This Court granted review of this second issue and ordered supplemental briefing via a *per curiam* order dated January 26, 2018. As acknowledged by the Opinion in Support of Affirmance (OISA), although appellant challenged the effectiveness of the Waiver as it applied to Decedent, she never questioned the overall viability of the doctrine of assumption of the risk below, and the issue is therefore waived. *See* OISA at 1, n.1.

individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa.C.S. §8301(a). Relying on Pennsylvania jurisprudence, appellant argues a wrongful death action is derivative of the victim's fatal injuries, but is nevertheless meant to compensate a decedent's survivors "for the pecuniary loss they have sustained by the denial of future contributions decedent would have made in his or her lifetime." Appellant's Brief at 13-15, *quoting Frey v. Pa. Elec. Comp.,* 607 A.2d 796, 798 (Pa. Super. 1992), and *citing Tulewicz v. Se. Pa. Transp. Auth.* 606 A.2d 427, 431 (Pa. 1992), *Kaczorowski*, 184 A. at 664 (wrongful death claim is "derivative" because "it has as its basis the same tortious act which would have supported the injured party's own cause of action").

Appellant relies on *Buttermore v. Aliquippa Hospital,* 561 A.2d 733 (Pa. 1989), where the tort-victim husband executed a general release and settlement agreement after a car accident which purported to waive recovery by "any and all other persons associations and/or corporations[.]" Appellant's Brief at 15-16, *quoting Buttermore*, 561 A.2d at 734. Plaintiff's wife did not sign the release agreement. The Buttermores filed a suit against medical professionals who treated him after the accident, including a claim brought by wife for loss of consortium. *See id.* at 16. On appeal from summary judgment, this Court ruled husband's claim was barred by the release he executed, but wife's claim was not because she herself had not signed it. *Id., citing Buttermore*, 561 A.2d at 736. Appellant argues the lower courts' ruling the Waiver in this case, which only Decedent

signed, bars his heirs' wrongful death claims is in direct contravention of *Buttermore*. *Id.* at 17-18, *citing Buttermore*, 561 A.2d at 735.

In response, appellee contends summary judgment was properly entered and dismissal of appellant's wrongful death claims should be affirmed. Appellee argues a wrongful death action is derivative of, and dependent upon, a tortious act that results in decedent's death. Appellee's Brief at 13, *citing Centofanti v. Pa. R. Co.*, 90 A. 558, 561 (Pa. 1914) (additional citations omitted). Appellee insists the Superior Court correctly determined Decedent's execution of the Waiver meant appellee's conduct was rendered non-tortious in all respects because appellee no longer owed Decedent any duty of care. *Id.* at 16-17, *citing Montagazzi v. Crisci*, 994 A.2d 626, 635 (Pa. Super. 2010) (plaintiff knowingly and voluntarily encountering an obvious and dangerous risk relieves those "who may have otherwise had a duty"); *Staub v. Toy Factory, Inc.*, 749 A.2d 522, 526 (Pa. Super. 2000) (*en banc*) ("Our [S]upreme [C]ourt appears to have concluded that in a negligence action, the question whether a litigant has assumed the risk is a question of law as part of the court's duty analysis . . ..") (additional citations omitted). Appellee also argues *Pisano* is not applicable here. Appellee contends *Pisano* determined only the narrow issue of whether a wrongful death plaintiff is bound by an arbitration agreement which she did not sign, and is not relevant to questions regarding the exculpatory Waiver signed by Decedent. *See id.* at 24.

**III.**

The Wrongful Death Act (the Act), provides an independent statutory cause of action that belongs to specific claimants, *i.e.* the surviving spouse, children or parents of the deceased. 42 Pa.C.S. §8301 (Act provides spouse, children or parents of decedent

can bring action "to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another"). *See Kaczorowski*, 184 A. at 665 ("By the statute there is given an explicit and independent right of action to recover the damages peculiarly suffered by the parties named therein."). This statutory claim for wrongful death "is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action. Its derivation, however, is from the tortious act and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor." *Id.* at 664 (internal citations omitted). Accordingly, Pennsylvania courts recognize that while wrongful death actions seek damages for losses to heirs arising from their relative's wrongful death, the claims are not derivative of — or limited by — the decedent's own rights. *See Pisano*, 77 A.3d at 660.

It is clear the General Assembly intended the Act to compensate the decedent's surviving heirs, not the decedent himself, whose own losses are encompassed in a survival action. *Compare* 42 Pa.C.S. §8301(wrongful death) *with* 42 Pa.C.S. §8302 (survival); *see also Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. 2015), *quoting Hatwood v. Hosp. of the Univ. of Pa.*, 55 A.3d 1229, 1235 (Pa. Super. 2012) ("The purpose of the Wrongful Death Statute . . . is to compensate the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death. . . . A wrongful death action does not compensate the decedent; it compensates the survivors for damages which they have sustained as a result of the decedent's death.") (additional citations omitted). The Act is thus designed to assure a decedent's heirs may seek compensation "for the loss of pecuniary benefits which [they] would have received from

the deceased had death not intervened." *Kaczorowski*, 184 A. at 665. Also, the Act is a remedial statute, and as such it must be liberally interpreted to effect its purpose and promote justice. 1 Pa.C.S. §1928(c); *Amadio v. Levin*, 501 A.2d 1085, 1087 (Pa. 1985) (wrongful death statute is "remedial in nature and purpose, and as such should be liberally construed to accomplish the objective of the act"); *see also O'Rourke v. Commonwealth*, 778 A.2d 1194, 1203 (Pa. 2001) (noting remedial statutes are to be liberally construed to effect objectives).

With these principles and the legislative purpose of the Act in mind, we must determine whether the Waiver provides a complete defense to a wrongful death claim brought by non-signatory heirs. A liability waiver is, at its core, a contract, and must be construed and interpreted in the same manner as other contracts — such as arbitration clauses or settlement agreements and releases — when determining whether it is effective against a non-signatory third party. The Waiver purports to be an exculpatory contract, and such contracts are generally disfavored by the law. *See Employers Liability Assur. Corp. v. Greenville Business Men's Ass'n.*, 224 A.2d 620, 623 (Pa. 1966) ("contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law"); *see also Soxman v. Goodge*, 539 A.2d 826, 828 (Pa. Super. 1988) ("the law . . . recognized that lying behind [exculpatory] contracts is a residuum of public policy which is antagonistic to carte blanche exculpation from liability and thus developed the rule that these provisions would be strictly construed with every intendment against the party seeking their protection"), *quoting Phillips Home Furnishing, Inc. v. Continental Bank*, 331 A.2d 840, 843 (Pa. Super. 1974). Accordingly, a pre-injury exculpatory agreement is valid only when "it does not contravene public policy, is between

parties relating entirely to their private affairs, and where each party is a free bargaining agent so that the contract is not one of adhesion." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1177 (Pa. 2010), *citing Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993). This Court has consistently recognized the exculpatory contract is an agreement that is "intended to diminish legal rights which normally accrue as a result of a given legal relationship or transaction . . . [which must be] construed strictly against the party seeking [its] protection." *Dilks v. Flohr Chevrolet, Inc.*, 192 A.2d 682, 687 (Pa. 1963), *quoting Morton v. Ambridge Borough*, 101 A.2d 661, 663 (Pa. 1954).

Thus, in determining whether the Waiver provides a defense to appellant's wrongful death action, we must liberally apply the remedial Act while we simultaneously construe the Waiver strictly against appellee as the party seeking protection from the contract. We would hold the Superior Court did the opposite in its decision below: the court erroneously gave the Waiver the broadest application possible while disregarding the remedial nature of the Act and the public policy considerations underpinning it.[6]

First, we note the Waiver is a contract between Decedent and appellee involving their own private affairs. *Chepkevich*, 2 A.3d at 1177. The Waiver includes broad

---

[6] The OISA suggests our view of the case ignores the question before the Court. *See* OISA at 2. Respectfully, the OISA's position reveals an overly narrow reading of the issue on appeal, *i.e.,* whether an exculpatory contract can be enforced against non-signatory heirs in a claim made pursuant to the Wrongful Death Act. *See supra* at 6-7. In answering that question, we examine the terms of the Waiver within the context in which it is to be enforced. We cannot disregard the nature of the underlying suit and our jurisprudence guiding our interpretation of exculpatory contracts, which specifically includes a consideration of public policy. *See Chepkevich*, 2 A.3d at 1177 (exculpatory agreement is valid only when "it does not contravene public policy . . ."). Although the question granted on appeal did not include the term "public policy," we must surely consider public policy when determining whether an exculpatory agreement is valid and enforceable under the given circumstances.

language barring **Triathlon participants** from filing suit to recover damages for injuries or death "which may arise out of, result from, or relate to my participation in the [Triathlon], including claims for Liability caused in whole or in part by the negligence of" appellees. *See* Waiver attached as Exhibit A to appellee's Answer and New Matter. However, the Waiver is plainly **not** an agreement between Triathlon participants' wrongful death heirs and appellee. We emphasize a wrongful death action belongs solely to a decedent's heirs, is intended to compensate them, and does not accrue to the decedent. *See Hatwood*, 55 A.3d at 1235, *quoting Machado v. Kunkel*, 804 A.2d 1238, 1246 (Pa. Super. 2002) ("Under the wrongful death act the widow or family is entitled, in addition to costs, to compensation for the loss of the contributions decedent would have made . . ."). Thus, while a pre-injury exculpatory waiver might indeed be effective to bar a survival claim by a decedent's estate, it is quite another thing to conclude the decedent's agreement acts as a complete defense to statutory claims that are specifically available to his non-signatory heirs. Appellee argues the Waiver provides a complete defense to appellant's wrongful death claim, but in our considered view, allowing the Waiver to have this effect would require us to ignore the purpose of the Act  and the public policy concerns it was specifically enacted to protect.[7]

Our conclusion is consistent with prior Pennsylvania case law arising from wrongful death actions. As this Court has stated, such lawsuits are meant to compensate the

---

[7] The OISA accurately observes an exculpatory agreement would "generally be valid to preclude a participant's ordinary negligence claims against the purveyor of an inherently dangerous sport or activity," but nevertheless rejects our view that the same waiver could be ineffective as a defense in a wrongful death claim while providing a viable defense in a survival action. *See* OISA at 10. We consider the disparate treatment of the Waiver in the two causes of action to be the direct result of the different goals and purposes served by the relevant statutes. *See supra* at 3, n.2.

statutory beneficiaries, *i.e.* the spouse, children or parents of the decedent for the pecuniary losses they sustained as a result of their relative's death. *See Tulewicz*, 606 A.2d at 431. Accordingly, our courts have recognized the distinct nature of these claims and have declined to enforce a decedent's own agreements and obligations against his heirs. *See Buttermore*, 561 A.2d at 736 (release signed by husband barred his own action against hospital but not the independent action of wife, who did not sign release); *Pisano*, 77 A.3d at 660, *citing Kaczorowski*, 184 A. at 664 (wrongful death claim is derived from injury to decedent but it is independent and distinct cause of action; decedent's agreement to arbitrate not binding on non-signatory heirs); *see also Rickard v. Am. Nat'l Prop. & Cas. Co.,* 173 A.3d 299 (Pa. Super. 2017) (decedent's agreement to accept insurance benefits in exchange for allowing subrogation by insurer not binding on non-signatory heirs who recovered damages in subsequent wrongful death action against tortfeasor). The Waiver in this regard is analogous to the settlement and release agreement at issue in *Buttermore*, or the arbitration agreement in *Pisano*.

We observe that the undisputed purpose of the Act is "to provide a cause of action against one whose tortious conduct caused the death of another." *Amadio* 501 A.2d at 1087. And, as we have stated, exculpatory contracts must be read narrowly. *See Dilks,* 192 A.2d at 687; *see also Tayar v. Camelback Ski Corp. Inc.*, 47 A.3d 1190, 1196 (Pa. 2012) (for exculpatory clause to be enforceable "contract language must be construed strictly"), *quoting Topp Copy*, 626 A.2d at 99. Allowing the Waiver to have a broad exculpatory effect with respect to non-signatory wrongful death claimants would essentially make the right the General Assembly created for certain heirs through the Act an illusory one. Abrogation of an express statutory right to recovery in this way violates

public policy, and a pre-injury exculpatory waiver that contravenes public policy is invalid and unenforceable. *Chepkevich*, 2 A.3d at 1177. *Cf. Tayar*, 47 A.3d at 1203 (curtailing purported effect of waiver on public policy grounds). Moreover, our recognition of relevant public policy concerns in this regard does not constitute "creation" of public policy. *See* OISA at 10. Our law is clear that determination of whether contract terms may be avoided on public policy grounds "requires a showing of overriding public policy from legal precedents [or] governmental practice . . .." *Tayer*, 47 A.3d at 1199. The public policy we recognize here is well-established in both judicial precedents and statutory enactment. This Court has declined to enforce exculpatory contracts "[w]here the legislature has, by definite and unequivocal language, determined the public policy of this Commonwealth with regard to a particular subject, [because] that pronouncement cannot be set aside and rendered unenforceable by a contract between individuals." *Boyd v. Smith*, 94 A.2d 44, 46 (Pa. 1953) (exculpatory waiver of liability unenforceable on public policy grounds due to conflict with statute). Precluding the use of the Waiver as a *carte blanche* automatic defense to wrongful death actions comports with the remedial purpose and protection expressed in the Act. A contrary holding elevates a private contract above public policy embodied in a statutory enactment, and overrides our jurisprudence directing a narrow and strict construction of exculpatory waivers.

Accordingly, we would hold the Waiver is void and unenforceable with respect to appellant's wrongful death claims and, as such, the Waiver should not be available to appellee as a defense in the underlying wrongful death litigation.[8] We would hold the

---

[8] Importantly, our holding would not render appellee defenseless in that litigation, despite the OISA statement our reading means appellant's right to relief is "absolute". *See* OISA

Superior Court erred in affirming summary judgment in favor of appellee on that basis, and reverse and remand to the trial court for further proceedings on appellant's wrongful death claim.

Justice Donohue and Justice Mundy join this opinion in support of reversal.

---

at 10. We recognize a wrongful death action is a tort claim arising from the alleged "wrongful act or neglect or unlawful violence or negligence of another." 42 Pa.C.S. §8301. Appellant must still prove the elements of her case, including causation, before any recovery would be assured. *See, e.g., Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) (to maintain negligence action, plaintiff must show defendant had duty to conform to standard of conduct, breach of duty, the breach caused the injury, and the injury resulted in damages).