J-A04005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| BARBARA ROBERTS, ADMINISTRATRIX OF THE ESTATE OF TERRY ALLEN SMITH, II | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | |
| | : | No. 611 MDA 2024 |
| | : | |
| EDWARD ELDER, III, A&E AUTO SERVICES, LLC, BRYAN NEBUHR, AND KATIE SNYDER | : : : : | |

Appeal from the Order Entered March 26, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2017-SU-003185

BEFORE:  LAZARUS, P.J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED: JUNE 25, 2025**

Barbara Roberts (Roberts), Administratrix of the Estate of Terry Allen Smith, II, (Decedent), appeals from the order entering summary judgment in favor of Edward Elder, III and A&E Auto Service, LLC (Elder and A&E).[1]  After our review, we reverse and remand for further proceedings.

---

[1] On May 22, 2024, this Court entered a rule to show cause as to why this appeal should not be quashed as it appeared the March 26, 2024 order did not dispose of all parties—where two defendants below, Bryan Nebuhr and Katie Snyder, still remained.  **See** Order, 5/22/24.  An appeal properly lies only from a final order unless otherwise permitted by rule or statute. **McCutcheon v. Philadelphia Elec. Co.**, 788 A.2d 345, 349 (Pa. 2002).  A final order is one that disposes of all claims in parties to an action.  Pa.R.A.P. 341(b)(1).  On June 5, 2024, Roberts filed a response to the rule to show cause, stating that she had resolved the claims against Defendants Snyder (owner of 2002 Chevrolet Express G3500 van in question) and Nebuhr (driver

*(Footnote Continued Next Page)*

This action arises out of a fatal car accident that occurred on December 10, 2015 at the intersection of Freysville Road and East Prospect Road in Windsor Township, York County. On December 1, 2015, Katie Snyder, the owner of the van, took the van to A&E for service. A&E inspected the vehicle. The A&E invoice indicates: "LABOR TO REPLACE FRONT BRAKES AND ROTORS.[2]

On December 10, 2015, Nebuhr drove the van to decedent's residence to pick him up to travel to a worksite in Lancaster, Pennsylvania. At approximately 6:54 a.m., Nebuhr and decedent were about five to ten miles into their journey, traveling on Freysville Road at or near its intersection with East Prospect Road in Windsor Township. That intersection is controlled by a stop sign on Freysville Road; however, there is no stop sign on East Prospect Road. Nebuhr slowed the van prior to entering the intersection and, once he entered the intersection, Nebuhr's vehicle collided with a vehicle (a 2015 Ford

_____

of van on day of accident) by executing a Joint Tortfeasor Release dated October 6, 2022. Accordingly, the trial court's order granting summary judgment in favor of defendants Elder and A&E disposed of all remaining claims and is a final order for purposes of appeal. **See** Response to Order to Show Cause, 6/5/24, at ¶¶ 5-7. On July 22, 2024, this Court discharged the rule to show cause. **See** Order, 7/22/24.

[2] As indicated **infra**, the trial court did not consider this invoice as part of the record as it was only attached to Roberts' brief. Although technically correct, the trial court overlooks the fact that other evidence presented, including the deposition testimony of the owner of the van and Roberts' expert report, supports the allegation that A&E performed this work. Moreover, at argument on its motion for summary judgment, counsel for defendants admitted A&E worked on the front brakes of the van ten days prior to the accident. **See infra**, at 9.

F450 Dump Truck) operated by a non-party, Jack Lowe. Decedent, who was in the passenger seat of the van, died as a result of his injuries in the collision.

Roberts' wrongful death and survival action is based on the alleged faulty replacement of brake pads and rotors by Elder and A&E, which caused or contributed to the fatal accident. Roberts' complaint alleged

> the brakes on the van failed to work properly causing the vehicle to enter the intersection without stopping and violently collide with the vehicle lawfully traveling in the westbound direction of travel on East Prospect Road, as a result of which the vehicle in which Decedent was a passenger, rolled onto the passenger side killing Decedent in the process.

Complaint, 4/23/21, at ¶ 15. The complaint further alleged that:

> Elder passed the vehicle for inspection and emissions even though the van did not meet the standards for the vehicle to pass said inspections and tests. *Id.* at ¶ 17. Said crash was directly and proximately caused by the joint and several negligent, careless, reckless[,] and intentionally wrongful conduct of Defendants, which consisted of the following violations according to the PA Vehicle Equipment and Inspection Regulations, issued by the PA Department of Transportation, 2014 (Pub. 45, Feb 2014):
>
> - The brake reservoir should have been checked and filled by A&E [] after the brake pads and rotors installation;
>
> - The brake reservoir should have been checked and filled as part of the PA State Safety Inspection;
>
> - The brake pedal travel should have been checked and corrected by A&E [] as part of the brake pad and rotor installation and as part of the PA state Inspection;
>
> - A&E [] never checked or filled the brake fluid reservoir or the brake pedal travel. The depleted reservoir was the cause of the excessive brake pedal travel. The depleted reservoir was also the cause of the mushy and spongy brakes and of the underperforming brakes reported by the driver of the van. The van should not have passed PA State

- 3 -

Inspection with either the depleted reservoir or the excessive brake pedal travel;

- The right rear axle seal leak and saturated brake shoes were visible without removing the wheel or drum. These conditions would have further contributed to the underperforming brake system. The van should not have passed PA State Inspection with a right rear axle seal leak and saturated brake shoes[.]

*Id.* at ¶ 18.

At his deposition, Nebuhr testified that he was driving slowly since it was dark and foggy:

I definitely was going slow and later on I found out at the time of the accident I was only going ten miles an hour. I was aware that I was going slow because of the fog in general that morning, but I didn't realize I was going that slow at the time the accident occurred.

N.T. Deposition of Bryan Nebuhr, 3/7/22, at 12. ***See id.*** at 34-35 ("Afterwards they said they did an investigation and after the investigation was concluded, they said that I was going ten miles an hour at the end. And [the "]they["] I'm referring to is the police department, I'm assuming.").

Nebuhr also testified that because he had lost consciousness and suffered a concussion from the accident, he had "no recollection" of how the accident occurred. *Id.* at 37, 51. However, he stated: "I think at the time of the accident I said something about the brakes." *Id.* at 38. He also testified that he did not recall talking to the police after the accident, but he knows he did. *Id.* at 41. He also had little recollection of speaking with Lowe, the driver of the dump truck. *Id.* at 46 ("I remember talking to the driver,

but I don't remember what we talked about. Like, I guess just us being in shock and us just realizing what happened."). Nebuhr testified that he did not recall specifically telling Snyder, the owner of the van, that the accident occurred because of brake malfunction, but he did "remember [talking] about it on the day of the accident[,]" but he could not recall to whom: "Maybe the police officer, but I honestly don't remember."). *Id.* at 65-66.

The officer on the scene, Sergeant Wyeth L. Barley, Jr., prepared an incident report and affidavit of probable cause, which stated:

> The driver of the F450 was identified as Jack Lowe. Lowe was traveling west on East Prospect Road coming from the Landfill in heavy fog when he was struck in the driver's side door by the Van[,] which was traveling north on Freysville. Lowe said he never saw the Van until it collided with the side of his truck. **He said he asked the operator what happened and the kid said his brakes did not work[,] thus the reason for not stopping at the stop sign.** The driver of the van was identified as Bryan Nebuhr of Stewartstown. The occupant pinned under the van who was pronounced dead at the scene is Terry Allen Smith, II. Officer Price spoke to [Nebuhr] at the scene[,] who told him that he stopped at the stop sign controlling traffic entering the intersection. Upon inspecting the roadway, I saw no signs of braking or pre-impact skidding[,] however the roadway was wet when the accident occurred.

Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, 11/13/23, Exhibit 2 (emphasis added); Deposition of Wyeth Barley, 10/19/17, at 20, Exhibit 2. *See also* Deposition Testimony of Jack Lowe, 10/19/17, at 14-15 ("Q: Next statement, [Officer Barley] said he asked the operator what happened and the kid said that his brakes did not work thus the reason for not stopping at the stop sign. Do you see that? A: Yes. Q:

- 5 -

Do you recall telling an officer at the scene that statement? A: No, no, I don't. Q: Did you speak to police officers at the scene? A: Yes, I did. Q: You don't recall [] --telling the officer that statement? A: Not offhand, no. Q: Would you have any reason to lie to any of the police officers at the scene of the crash? A: No, absolutely not. Q: Would you agree with me that your recollection of the events would be best at the scene than they would be today? A: Yes."); *id.* at 19-20 ("Q: So when we read in Exhibit 2 the comment brakes did not work, as you sit here today, you're not certain that that's exactly what you were told by [Nebuhr]? A: Like I said, he probably told me that at this accident, but I don't remember because it was so long ago.").

On September 14, 2023, Elder and A&E filed a motion for summary judgment. The court heard oral argument on the motion and, on March 26, 2024, granted the motion in favor of Elder and A&E. In its opinion accompanying the March 26, 2024 order, the court stated that it did **not** consider the December 1, 2015 service invoice from A&E, which indicated that A&E had replaced the front brake pads and rotors on the van ten days prior to the accident. The court stated:

> Here, Plaintiff has attached a plethora of documents to its brief. These documents are not a part of the record we can consider for purposes of summary judgment, but some of them, if they were properly a part of the record, **would likely affect our analysis and the outcome of the instant motion.**[2]
>
>> [2] As discussed throughout our opinion, **there is reference to A&E performing work to the front brake system of the Chevrolet van.** However, the invoice outlining the

> precise work performed was attached to Plaintiff's brief and, therefore, is not part of the record we review.

Trial Court Opinion, 3/6/24, at 5, n.2 (emphasis added).

Roberts filed a timely notice of appeal. Both Roberts and the trial court complied with Pa.R.A.P. 1925. Roberts raises five issues on appeal:

1. Whether the trial court abused its discretion and erred as a matter of law in granting summary judgment for [Elder] and A&E [] as there existed disputed issues of material fact and credibility issues regarding the cause of the subject motor vehicle fatality and the surrounding circumstances.

2. Whether the trial court abused its discretion and erred as a matter of law in granting summary judgment for [Elder] and A&E [] after failing to properly consider an invoice attached to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment reflecting the replacement of front brakes and rotors by the moving defendants on December 1, 2015, when defendants conceded this fact, the invoice was produced in discovery, was properly presented, and when there was significant additional evidence of record reflecting the same scope of services, including defendants' own expert, who acknowledged and admitted the same scope of services performed by the moving defendants in his expert report.

3. Whether the trial court abused its discretion and erred as a matter of law in granting summary judgment for [Elder] and A&E [] after improperly weighing and reconciling the parties' respective expert opinions regarding the condition of the brakes at the time of the incident and the cause of the fatal collision.

4. Whether the trial court abused its discretion and erred as a matter of law in granting summary judgment for [Elder] and A&E [], after improperly weighing, reconciling and misconstruing plaintiff's expert report based on a single typographical error, which is clearly contradicted by the remainder of this expert report. More specifically, on page two of this trial court's opinion, it states, "[o]f the four deficiencies Gurreri [plaintiff's expert] identifies, he opines three of them were caused by the collision." This is based

- 7 -

on a single typographical error by Gurreri, but the remainder of his report contradicts the implication of that typographical error and expressly opines that the three deficiencies predated the subject crash.

5. Whether the trial court abused its discretion and erred as a matter of law in granting summary judgment for [Elder] and A&E [] in relying on 75 Pa.C.S.A. § 4702.1, as the liability of the moving defendants is within that contemplated by this statutory provision and markedly similar factually to the case of **Hill v. Smith**, 7 Pa. D&C 4th 422, 425 (C.P. Erie 1990).

Appellant's Brief, at 3-4 (some capitalization omitted).

> Our standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary. We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. **Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.**

**Rodriguez v. Kravco Simon Co.**, 111 A.3d 1191, 1193 (Pa. Super. 2015), quoting **Sokolsky v. Eidelma**n, 93 A.3d 858, 861–62 (Pa. Super. 2014) (quotation marks and citations omitted) (emphasis added). The issue of whether there are no genuine issues as to any material fact presents a question of law. Therefore, our standard of review is de novo, and we need not defer to the determinations made by the lower tribunals. **Buffalo Township v. Jones**, 813 A.2d 659, 664 n.4 (Pa. 2002); **see also Valentino v. Philadelphia Triathlon, LLC**, 209 A.3d 941, 950 (Pa. 2019). Further, "the moving party has the burden to demonstrate the absence of any issue of

material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1159 (Pa. 2010). Moreover, the rule that a trial court must view the facts, and all reasonable inferences therefrom, in a light most favorable to the non-moving party "**clearly includes all expert testimony and reports submitted by the non-moving party or provided during discovery**; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot sua sponte assail them in an order and opinion granting summary judgment." ***Id.*** at 1161 (emphasis added).

Roberts argues the trial court erred in granting summary judgment, claiming that the court rejected the evidence that Elder and A&E "replaced the front brake pads and rotors on the van involved in the accident, which the trial court admitted would have affected its decision, and[,] thus[,] was a 'material fact.'" Appellant's Brief, at 21, quoting Opinion in Support of Summary Judgment, 3/26/24, at 4. We agree.

The trial court stated: "As discussed throughout our opinion, there is reference to A&E performing work to the front brake system of the Chevrolet van. However, the invoice outlining the precise work performed was attached to Plaintiff's brief, and, therefore, is not part of the record we review." ***Id.*** at 4, n.2.

The trial court, therefore, found no support for the allegation that A&E performed this work. However, there was other evidence supporting this

allegation, and, further, it was **admitted by defendants**. Counsel for defendants acknowledged this before the trial court at oral argument on the motion for summary judgment, stating: "I think it's undisputed that the work that A&E Auto provided for this van, as far as the brakes go, w[as] only on the front brakes[.]" N.T. Argument on Motion for Summary Judgment, 3/19/24, at 21. *See id.* at 23 (defendants' attorney stating: "The work was done on the front wheels."). *See also* Deposition Testimony of Detective Wyeth Barley, Jr., 11/1/17, at 18 ("Q: Last sentence in that paragraph says, it was evident that the van had new pads and rotors installed on the front brakes. Do you see that? A: That was obvious to me, and I'm not even a mechanic."); Deposition Testimony of Katie Snyder, 3/7/22, at 23 ("Q: So, if I told you based on the records we have at the inspection at A&E Auto of the van occurred on December 1st, do you have any reason to disagree with that? A: No."); *id.* at 32 ("Q: But no reason to dispute that the new brake pads were put on[,] as were the new rotors[,] when it was inspected? A: No.").

The court further states that outside of Joseph A. Gurreri's expert report, "there is nothing of record [that] shows moving defendant[s] replaced brake pads and rotors or when that was done. At that, Gurreri's report only states the van had 'new front brake pads and rotors[,]' which he found consistent with A&E's invoice from the date of the inspection." Opinion in Support of Motion for Summary Judgment, 3/26/24, at 3 (unpaginated). The court further opines that "Gurreri never states it was A&E who replaced the brake

pads and never states when he believes the brake pads and rotors were replaced." *Id.* We disagree with the court's assessment that the foregoing is insufficient proof of the allegation in Roberts' complaint.

> When a motion for summary judgment is based on insufficient evidence to support the factual basis for the cause of action or defense, the non-moving party must come forward with sufficient evidence essential to preserve the cause of action. The evidence adduced by the non-moving party must be of such a quality that a jury could return a favorable verdict to the non-moving party on the issue or issues challenged by a summary judgment request.

*InfoSAGE, Inc. v. Mellon Ventures L.P.*, 896 A.2d 616, 626 (Pa. Super. 2006) (citation omitted).

> As our Supreme Court has observed:
>
> Allowing non-moving parties to avoid summary judgment where they have no evidence to support an issue on which they bear the burden of proof runs contrary to the spirit of [Pennsylvania Rules of Civil Procedure 1035.1–.5]. We have stated that the "'mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial.'" We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case (or, in some matters, issues in a case) where the party lacks the beginnings of evidence to establish or contest a material issue. [] Forcing parties to go to trial on a meritless claim under the guise of effectuating the summary judgment rule is a perversion of that rule. [] Thus, we hold that a non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor.

*Ertel v. Patriot–News Co.*, 674 A.2d 1038, 1042 (Pa. 1996). The evidence relied upon by the non-moving party to defeat a summary judgment motion "need not be direct evidence, but may be circumstantial evidence and the

inferences reasonably deducible therefrom." ***InfoSAGE, Inc. v. Mellon Ventures L.P.***, 896 A.2d at 626.

Here, we find the evidence upon which Roberts relies is sufficient to support the allegations that A&E performed the work in question on December 1, 2015. The evidence is also sufficient to support an inference that the work was negligently performed and caused or contributed to the accident on December 10, 2015.

With respect to the competing expert reports, the trial court reasoned as follows:

> Plaintiff and moving defendants each rely upon inspections of the van performed after the collision. Plaintiff's inspection was performed by Joseph A. Gurreri, who then authored a written report. In his report, Gurreri opines there were 4 deficiencies on the part of Elder and/or A&E: 1) **The master brake reservoir should have been checked and filled both as part of the replacement of the front brake pads and as part of the annual state required inspection**; 2) the right rear axle seal was leaking and caused the rear brakes shoes to be saturated with oil; 3) the van's tailpipe was missing; and 4) the front right wheel had a broken wheel stud and missing lug nut. Of the [four] deficiencies Gurreri identifies, he opines [three] of them were caused by the collision. **He attributes only the low brake fluid level in the reservoir to Elder and/or A&E**.

Opinion in Support of Summary Judgment, *supra* at 2 (unpaginated), citing Motion for Summary Judgment, Exhibit N (emphasis added).

> Defendants rely upon an inspection performed by Brian Baker,[] an experienced auto inspection mechanic. Baker's inspection of the van was undertaken at the request of York County Regional Police Department (then York Area Regional Police Department) as part of its investigation. Baker observed the van at the scene while still tipped on its passenger side. Baker righted the van and

- 12 -

towed it to his service station, where it was secured and sat until the time of his inspection. While at the scene, Baker manually engaged the brakes of the van and found them to operate normally. Upon his later inspection of the van, he found no abnormality with the braking system of the van. **He did not check the brake fluid level in the reservoir at this time, as he found no evidence of an underperforming brake system and found no evidence of a leak in the hydraulic brake system**.

*Id.* at 2-3, citing Motion for Summary Judgment, 9/15/23, Exhibit F (emphasis added).

The trial court rejected Gurreri's expert opinion attributing the low brake fluid level in the reservoir to Elder and/or A&E. The court acknowledged checking brake pedal travel is required as part of the state inspection process, but it rejected "Gurreri's conclusion that because the brake pedal did not function properly [nine] months after the collision, moving defendants must not have tested it during the state inspection before the collision." *Id.* at 10. The court added that its "rejection of an expert opinion with a clear logical flaw" was "neither a determination of credibility nor does it create a dispute of fact." *Id.* at 10-11.

We disagree with court's characterization of Gurreri's conclusion—the two are not necessarily mutually exclusive. It is possible that defendants did not test the brake pedal travel at inspection, and it is possible that this is the reason the brake fluid level was low and that this caused the brakes to underperform. Simply because Guerreri determined the brake fluid was low nine months after the accident does not preclude the possibility that defendants did not test the brake pedal travel at inspection. The evidence

supports a reasonable inference that the brake fluid level was low when the van left the defendant inspection station only ten days before the accident, after defendant had replaced the front brakes and rotors. It is for the fact-finder to weigh the evidence and the expert opinions and to reach a determination. We conclude, therefore, that defendants are not entitled to summary judgment because a genuine issue of fact exists that, if the brake fluid level was too low while the van was being driven, the brakes could fail or underperform, thus risking harm to the van's driver and passengers. *See Straw v. Fair*, 187 A.3d 966, 987 (Pa. Super. 2018) (genuine issues of material fact existed as to whether automobile repair shop that performed required annual state inspection on vehicle and performed repairs on hood latch assembly owed motorist and his family, who were passengers in vehicle, duties of care and breached those duties, precluding summary judgment in action brought by motorist and wife alleging that hood latch failed while motorist was driving vehicle, causing him to stop in middle lane of highway, after which another motorist rear-ended vehicle, resulting in serious injuries to motorist, his wife and child, and death of six-year-old son). *See also* 75 Pa.C.S.A. § 4702.1(a) ("An inspection conducted pursuant to section 4702(a) (relating to annual inspection) . . . shall not be construed as a guaranty of the safety of any vehicle and neither the official inspection station issuing the certificate of inspection nor the official inspection mechanic performing the inspection shall be liable to the owner or occupants of any inspected vehicle for any damages caused by the failure or malfunction of that vehicle or to the

owner or occupants of any vehicle involved in an accident with that inspected vehicle or to any pedestrian injured in the accident **unless it can be shown by a preponderance of the evidence that the failure was caused by the negligence of the inspection station or mechanic**.") (emphasis added).

Viewing the record in the light most favorable to Roberts, as the nonmoving party, we conclude that there remain genuine issues as to material facts regarding the work done on the van in question and whether that work caused or contributed to the accident in question. A record that supports summary judgment will either show the **material facts are undisputed** or **contain insufficient evidence of facts to make out a prima facie cause of action** or defense and, therefore, there is no issue to be submitted to the factfinder. ***Stein v. Magarity***, 102 A.3d 1010, 1013 (Pa. Super. 2014). Here, it appears that the trial court engaged in weighing the evidence presented, rather than simply viewing it. ***See Jones v. SEPTA***, 772 A.2d 435, 438 (Pa. 2001) (trial court does not weigh evidence; that is role of jury). ***Accord: Redland Soccer Club v. Department of the Army***, 696 A.2d 137, 147 (Pa. 1997). The issue here is whether a trier of fact could have looked at the evidence and found that defendants Elder and A&E were liable. The fact that one expert testified that the brakes were deficient, and the other testified that they were not, is *prima facie* a dispute about the evidence. Two qualified experts reached differing opinions about how the accident occurred and what defects were involved; this, by definition, constitutes disputed issues of material fact. Further, whether the jury would credit Roberts' expert is not

the issue at this juncture. Whether one opinion should be given more weight than another is also not the issue. These are matters for a jury to consider. *See Summers*, *supra* at 1161; *see also DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 595, 598 (Pa. Super. 2013) ("[T]he parties presented conflicting evidence through the presentation of expert evidence. [] The court erred when it chose between conflicting expert evidence at the summary judgment stage and relied on the moving party's expert report to decide a material issue of disputed fact. . . . The credibility and weight to be attributed to the experts' conclusions were not proper considerations at summary judgment.").[3] Accordingly, we reverse the order granting summary judgment and remand to the trial court for proceedings not inconsistent with the dictates of this memorandum.

---

[3] Notably, at the argument on the motion for summary judgment, the trial court stated that defendants' counsel made a good argument as to why defendants' expert "is more credible than" Roberts' expert; the court acknowledged, however, that "that's exactly what that is, [it's] a credibility determination and **not one I can rely on for purposes of summary judgment**. So if your motion is going to be successful, I think it's going to be successful on the issue of what liability your Defendants have based on the work that they did or did not perform." N.T., Argument on Motion for Summary Judgment, *supra* at 24.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2025